Good morning, Your Honor. I'm Patricia Law. I'm here on behalf of the appellant and plaintiff in the underlying case. These motions were premised on the proposition that there is not, nor can there be, any liability unless and until an exception applies. The district court agreed. That premise is 180 degrees opposite from general tort liability law. If you've done something wrong and you injure somebody thereby, you're liable. The defense relies on the Prevet line of cases, but Prevet was the exception to the rule of general tort liability. Prevet was a policy-driven rule. Prevet, in its own language, told everybody what the policy was. The policy of Prevet and its decision was to avoid the anomalous result that a non-negligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury. I won't bore this Court with the explanation of the nuances of all of the cases that followed Prevet. Suffice it to say, the reason so many of them were published was because in the wake of Prevet, there were a bunch of brilliant plaintiff's lawyers, far smarter than me, that were able to artfully craft pleadings which eloquently disguised nonfeasance, vicarious liability, derivative liability as direct negligence. So each of those courts that published a ruling in the wake of Prevet did so to ensure that a non-negligent hirer would not be held responsible for the negligence of its subcontractor. These plaintiff's lawyers came up with theories like negligent supervision, negligent hiring, negligent exercise of retained control, and some general workplace... Which exception to Prevet do you suggest applies? I do not believe that Prevet applies at all in this case. Then why don't you tell us that? Okay. I don't believe that Prevet applies in this case because I was not required to artfully craft any type of disguising language. What I pled in this case as to TXI was their affirmative malfeasance, their active negligence in having disabled this parking brake safety feature. They disabled it, they concealed it, and they failed to disclose this concealed defect to Mr. Dobbs. I pled and did not have to do so artfully or disguising anything else. United Rentals failed to repair the parking brake. They were called out weeks before this accident to repair the boom on this same forklift, and at the same time they were asked to inspect and repair a malfunctioning parking brake. They did not do so, and weeks later my client was injured by this disabled parking brake. This accident could not have happened. It would have been impossible for this accident to happen had that parking brake, as designed, been functioning on the date of this incident. This was not a mechanical parking brake that if you parked on a hill too steep it might pop off. This was actually an integrated safety system whereby the hydraulic circuit was open when the parking brake was activated, making it impossible for this unit to actually go into gear, either forward or reverse, while that parking brake was activated. My client on the date of this incident was a 30-plus year mechanic. He was intimately familiar with not only this style of forklift but many, many, many others. He was relying on the safeguard of this fail-safe parking brake system when he was asked to troubleshoot a completely different system, the transmission. All right. Following that theory, though, opposing counsel argues that United Rentals did not owe a duty of care to Dobbs. They do argue that. And the district court at page 6 of 7 of their ruling pointed out that I had failed to cite to any sources that stood for the proposition that the United Rentals or any repair company would owe a duty. And that's actually not accurate. At uncontroverted material facts numbers 34 and 42, pardon me, 34 and 41, I cited the district court to the case called CO v. All Makes Overhead Door, 97 Cal. App. 4th, 1193, at page 1206. And I specifically pointed out to the court that that CO case at page 1206 had set forth the circumstances under which an independent contractor repairer may owe a duty to a third party injured by the equipment repaired if, one, the repairer negligently performs the repair, causing the third party's injury, or, two, the repairer negligently fails to make a requested repair, causing the third party's injury. Ms. Law, in that CO case, was the plaintiff an insured worker under workers' compensation? In the CO case, the plaintiff was not. That is a significant difference between your case and CO, is it not? It is. Because the whole purpose of Privet, the policy reason of Privet, was that if a worker is covered by workers' compensation, then, unlike a bystander or a simple trespasser or other person on land, he is not entitled to recover. How do we get around that California policy? Privet itself, at page 697, addressed that issue. And the exact language in the Privet case at page 697 was, the workers' compensation exclusivity clause does not preclude the employee from suing anyone else whose conduct was approximate cause of the injury. I'll give you an analogy. If United Rentals, or TXI for that matter, used company cars for their employees, and they sent a car out to a brake shop, and they said to that brake shop, this vehicle's brakes are malfunctioning. We need you to fix it before we give it back to our employee. And that brake shop did a repair negligently, and the brakes didn't work. The argument by the defendants in this case is that if I give that car back to my employee and he drives out of my plant and he smashes into a wall because the brakes aren't functioning, he has, my employee, has no right to sue the brake shop. That's not the state of California law. California law not only does Privet set forth the fact that it's not abrogating a workers' compensation recipient from suing a third party, but Labor Code Section 3852 codifies in California the right of a worker who receives workers' compensation benefits to also sue a third party if they approximately caused the accident. So knowing my concern, one of my biggest concerns about the court's ruling as it relates to TXI is they don't even have a fleeting mention of my own. Have you finished with your presentation on United Rentals, Judge Wardlaw's question? I have finished with my analysis in United Rentals. The MSJ in this case was premised only on the relationship of the parties. In other words, the defendant said because Mr. Dobbs' employer was brought here and because Mr. Dobbs was in the course and scope of his employment when he got hurt, that's the end of the story. But that's the same thing that was dealt with in the Ray v. Silverado case. In Ray v. Silverado, the court pointed out, this is 98 Cal App 4th 1120, the conclusion of that court was that the defendants had rested their motion on a faulty legal premise that Prevett and Toland conclusively absolved them of any possible liability, precisely what the argument is in this case. The appellant, having asserted certain direct liability causes of action that were viable in light of California Supreme Court decisions, the court erred in granting summary judgment based on the Prevett-Toland rationale. Now, the district court found that the Kinsman exception, Kinsman v. Unocal, did not apply because Kinsman was limited simply to premises liability cases. Do you agree with that? Well, I agree that that is the holding of Kinsman. Absolutely, I do. But, again, I think that's the danger in evaluating this case under the Prevett exception. Well, why would Kinsman cite Ray v. Silverado the same way you did, if it was limited only to premises liability? I'm arguing on your behalf. Thank you, Your Honor. And I did argue that in the motion, that this should be part of the Kinsman exception. But that's only if this court thinks that this case should be evaluated under the Prevett line of cases. I think Labor Code Section 3852 and that language about workers' compensation exclusivity not being expanded to abrogate the workers' right to sue a third-party negligent tortfeasor, I think that language alone dictates that this not be evaluated, even under the auspices of a Prevett. Now, in this argument, you're arguing with certainty that United Rentals acted with malfeasance and failing to repair the parking brake. But I got the sense from the briefs that it wasn't clear whether it was United Rentals that hadn't repaired the parking brake or whether it was TXI's own employees who had sought to jig the parking brake to work. I mean, is that a question of fact? I think it's a question of fact. I mean, I think in all favor to United Rentals, I doubt that I would find any evidence that United Rentals used like the duct tape and chewing gum that was used to bypass this unit. I mean, the testimony that came before the district court was that what had been used to jerry-rig the system and bypass this safety feature was like headlight assemblies from the 1960s in Ford trucks, precisely those type of things that would be found in a maintenance garage at a rock quarry that had been in business for 100 years before the date of this incident. So I think, you know, the inference to be drawn from the evidence is because TXI could not come up with anybody else who had jerry-rigged this system. Well, wasn't there a work order from TXI saying that something, that this jerry-rigged contraption had to be looked at? There were two work orders from TXI. There was an internal work order to its own employees from January of 2015 that said this brake system needs to be overhauled, including a full disassembly. Now, we know from the uncontroverted material facts that the only outside company that ever worked on this unit was United Rentals. There is no invoice from United Rentals that would show that anybody outside of the TXI company did this disassembly or overhaul of the brakes in January of 2015. Again, the reasonable inference to be drawn from that is that TXI did it in-house. The other invoice that we're talking about is the one that was weeks before the happening of this accident where United Rentals was called out to repair an oil leak on the boom of this unit. And as part of that inspection and repair, they were asked to inspect a malfunctioning parking brake on this unit. They claimed to have, quote-unquote, inspected it and found that it was okay. When was the date of that second invoice? That is Exhibit F, Your Honor, and the date of that invoice, I have it right here. The date of that invoice is May of 2015, Exhibit F, to the exhibits in our uncontroverted material facts. And we also put in our uncontroverted material facts the fact that the very person who did this inspection said it was done in a matter of seconds. The components were not looked at. You're talking about the United Rental witness. I am, Your Honor. Campos. Mario Campos? Correct, precisely. Mario Campos said that what was done in order to troubleshoot and determine whether a repair was necessary was just a few seconds of inspection of the brake. In other words, I pushed the button or pushed the lever that activated the brake. I tried to drive through it. When I couldn't drive through it, I said it was okay. I think talking about seconds, we've taken you minutes past your time. Thank you, Your Honor. Thank you, Counsel. Thank you, Your Honor. You may proceed. Good morning, Your Honors. May it please the Court, Martin Stratt of Jeffrey Mangels on behalf of defendants TXI and United Rentals North America. Would you address, please, your claim that there's no argument, no issue raising as to establish a duty of care running from United Rentals to the plaintiff? Yes, sir. The case of Alvarez v. Seaside Transportation examined a scenario where a landowner defendant moved for summary judgment under Privet. In addition to that landowner, two non-landowners also moved for summary judgment under Privet. They presented the same evidence as the landowner. And in Alvarez, the Court articulated a two-part test. All three defendants satisfied that two-part test. The Court determined that the burden was shifted to plaintiff, and they relied on the holding of Ruiz v. Herman for that proposition. Ruiz v. Herman is another case that examined the application. Pardon me. Maybe I didn't make myself clear. Ms. Law says that she cited a case called CO 97 Cattle Lab 4th at page 1206 and Undisputed Facts 34 and 41 as the basis for a duty of care owing from United Rentals to the plaintiff. What I'd like you to address is, is that an accurate reading of the record? And if so, why is it an insufficient allegation of the duty of care? I do not believe it is an accurate reading of the record, Your Honor, because I do recall that United Rentals addressed that argument on page 5 ER 964, that argument being CO. And as United Rentals explained, Ms. Law did not address all four factors under SEO, and nor do I think SEO is a Privet case. So that case does not have applicability to the case at hand. I'm sorry, are you finished with that line? You finished it? Yeah. Okay, sorry. So what do we make of the evidence that seems to indicate that TXI was aware of the parking brake malfunctioning and did not warn Dobbs about this? Your Honor, the evidence shows that TXI was not aware. In deposition, Donald Pippin, TXI employee, was asked whether he was aware of any issues with the parking brake around the time of the incident. At page 3 ER 514, he said no. He also said at pages 3 ER 512 and 513 that when he had previously been informed about a potential issue  TXI employee, Diane Fiona, at page 3 ER 518 confirmed that Mr. Pippin did what he said. But what do we do with the evidence that the brake itself was found jerry-rigged and there was no related invoice from United Rentals to show that United Rentals had anything to do with that particular fix to the parking brake? I dispute that the evidence showed that the telehandler... Oh, isn't that a reasonable inference to be drawn from the evidence? I'm sorry, that it was jerry-rigged? Yeah. I do not believe it was jerry-rigged. What Jerry Mann said, Jerry Mann was the gentleman who did the post-incident inspection. Jerry Mann, as discussed on pages 6 and 7 of our brief, said that he found two switches and what he called a relay. There's a picture in the record, if your honors care to see it, at 3 ER 416 through 418. It's a switch. It's a part of a switch. And he said, as explained on page 7 of our brief, that after the incident he replaced the switches and the telehandler worked fine. That's what TXI contacted Mr. Dobbs to do, to inspect the machine, look for what was causing it not to drive, and let them know and repair it. Mr. Mann said the switches are what was causing the machine not to drive, either one of the two switches or a combination thereof. And this is why the California Supreme Court's discussion in Kinsman is relevant to this action. There the court said, quote, an employee of a roofing contractor sent to repair a defective roof would generally not be liable to sue the hirer if injured when he fell through the same roof due to a structural defect and as much as the inspection for defects could reasonably be implied to be within the scope of the contractor's employment. Yes, but Mr. Dobbs was sent to engage the transmission that wouldn't enter in a drive and wouldn't enter in a reverse. He wasn't sent to fix the parking brake. Your honor, he was not sent to inspect the transmission. He was told that the telehandler wouldn't move. And as Mr. Dobbs explained in his deposition at 2ER74 line 22 through 2ER75 line 10, he was told a symptom of whatever was ailing the telehandler was that it wouldn't move, that they couldn't get it to move, they couldn't get the transmission to engage. No one from either TXI or United Rentals told Mr. Dobbs to inspect only the transmission.  And your honor, I would also like to explain that. The evidence in the record here shows that the parking brake wasn't disabled during an appellant's inspection. As discussed on pages 4 to 6 of our brief, the parking brake worked fine. TXI escorted Mr. Dobbs out to a sprawling property, an area of a sprawling property, because the telehandler broke in the middle of nowhere. Mr. Dobbs had to drive his work truck out to it because it was stuck there. He then proceeded to do his inspection as he saw fit. He said that he put the telehandler in drive and that he began doing various checks around the telehandler and that he says the parking brake was engaged. He had the machine in drive, parking brake engaged. It didn't move for 30 minutes. The telehandler didn't move until Mr. Dobbs crawled beneath the telehandler, took some pins and stuck them into the transmission that was engaged in drive. That's when the telehandler moved. There's no evidence of a parking brake failure here. The evidence shows that the machine only moved when Mr. Dobbs plugged the pins into the transmission. That's when the machine moved, and that's why he was injured, because Mr. Dobbs left his legs in front of the rear tire while he was inserting the pins into the transmission. And Mr. Dobbs also testified that he put a set of chocks in front of the tires. Mr. Dobbs brought the chocks. He put the chocks in front of the tires because he thought the chocks would stop the telehandler in the event it moved. Unfortunately, those chocks did not stop the telehandler, but TXIA and United Rentals did not tell him to use those chocks. That was his own decision. It was also his own decision to place his legs in front of the tire while he was doing that sort of testing with a live engine. And I'd also like to comment on the work orders and the invoices that were referenced during my colleague's argument. As discussed in our brief on pages 50 to 55, we have serious concerns with the presentation of that evidence. The discussion of those invoices lack any foundation whatsoever. There is no testimony from a witness to lay a foundation for what those work orders may have said. Instead, plaintiff's counsel is providing their own interpretation of what supposedly is associated with those work orders. That is improper evidence. There is no evidence in the record verifying that any of those work orders, the work corresponding with those work orders, had anything to do with the parking brake. The work order about a brake system repair does not necessarily mean it had anything to do with the parking brake. And finally, Your Honor, in the brief amount of time I have left, I'd like to address the 2005 opinion in Brown v. Turner Construction that my colleague submitted as supplemental authority on Wednesday afternoon because that case helps demonstrate why this Court should affirm summary judgment. The Brown case is just an example of how a plaintiff may rebut the presumption of non-liability under Privet. Thus, Brown is an example of where a plaintiff raised sufficient evidence to invoke an exception, i.e., raised sufficient evidence of direct liability. Now, on pages 1345 and 1346 of the Brown holding, the Court explained what evidence was raised to show an affirmative contribution. Here is a summary. One, the defendants undertook to arrange and supply the means and methods of work, including safety systems and devices. Two, the defendants then withdrew the safety systems and devices before the work was completed. Three, the defendants left plaintiff with no safe means of completing the work. Four, the defendants abruptly removed the hydraulic lifts the day before the injuries. And five, the defendants demanded that the work be finished without delay. This case is distinguishable. Unlike the defendants in Brown, the respondents here did not undertake a duty to manage safety during Mr. Dobbs' inspection, nor did they interfere with Mr. Dobbs' performance of that inspection. As discussed on pages four to six of our brief, the evidence shows, one, Mr. Dobbs was hired to repair a 30,000-pound telehandler. Two, appellant was informed that the telehandler would not move. That's why it was stuck in the middle of nowhere. Three, he used his professional judgment and experience to troubleshoot the telehandler by himself and was using the quote-unquote process of elimination to figure out what was wrong. Four, he used a set of chalks, as I mentioned, that he brought to the site himself, which he thought were sufficient. Five, the machine only moved after 30 minutes when he stuck a pin into the transmission, and then the machine drove through the parking brake. I see that I'm out of time, Your Honor. Thank you very much. Thank you. Thank you very much, Counsel. Ms. Love, should we give a couple of minutes? I was going to give her a couple of minutes. Go ahead. Some new facts came out here. I'd like to address first, if I could, the thought that this was not a bypassed parking brake. This accident had nothing to do with Mr. Dobbs putting pins in. As the court knows from the reading of Jerry Mann's testimony, Jerry Mann inspected the unit thereafter. He knew it had hurt somebody. He was doing absolutely nothing other than checking the parking brake from the driver's seat in the yard of his repair shop and the parking brake failed there as well. And it went up and over chalks as well. So this idea that it was no problem with the parking brake or that Mr. Dobbs did something to cause it to move is absolutely untrue and totally belied by Jerry Mann's testimony. This unit was not stuck in the middle of nowhere. It was right in the middle of where all of the TXI employees were working around it. The work orders that were produced and used as evidence in this case were accompanied by the demands for production of documents sent by my office for proof of all work that had been ordered or done on the unit. They were authenticated. And the thought that Mr. Dobbs should have done his work more safely, how could he do his work more safely if he didn't know that the parking brake had been bypassed? The parking brake was in and of itself a small compartment underneath the driver's seat away from the transmission, away from anything that Mr. Dobbs would have been checking. Where is your evidence that the parking brake malfunction had anything to do with the movement of this telehandler? That is in Jerry Mann's testimony. It's our additional material fact number 37. Jerry Mann is the specialist that was hired by OSHA to inspect this unit to determine why it failed. And his testimony, there's about 15 pages of testimony where he said there were relays and bypasses that thwarted the safety feature that was intended to have been on this unit. All right. Thank you very much, Counsel. Thank you so much. Dobbs v. TXI Riverside is submitted.
judges: Boggs, Wardlaw, Bea